IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

REMUS JOHNSON and
BROOKE JOHNSON-PAQUETTE,

|  |  |  |
|---|---|---|
| Plaintiffs, | | OPINION AND ORDER |
| v. | | 23-cv-761-wmc |

SCHOOL DIST. OF RHINELANDER
BOARD OF EDUCATION and ERIC BURKE,
in his official capacity as Superintendent,

Defendants.

Plaintiffs Remus Johnson and Brooke Johnson-Paquette brought this action under 20 U.S.C. §§1681-1688 ("Title IX") against the School District of Rhinelander Board of Education and Eric Burke, in his official capacity as Superintendent of the School District of Rhinelander (collectively, the "District"). Plaintiffs assert that the District discriminated against Johnson based on gender identity, nonbinary status, and nonconformity to sex-based stereotypes. Defendants move to dismiss plaintiffs' complaint. The motion will be denied, except that plaintiff Brooke Johnson-Paquette will be dismissed for lack of standing and Eric Burke will be dismissed as a redundant defendant.[1]

---

[1] Plaintiffs did not address defendants' arguments concerning either plaintiff Johnson-Paquette or defendant Eric Burke in their response brief. As such, the court will not raise arguments on their behalf. As a result, plaintiff Johnson-Paquette and defendant Eric Burke will be dismissed from the action, and the courts use of plaintiff and defendant is solely in reference to Remus Johnson and the School District of Rhinelander Board of Education, respectively.

ALLEGED FACTS[2]

### A. Parties

Plaintiff Remus Johnson is an 18 year old, nonbinary[3] Wisconsin resident who was a student in the School District of Rhinelander.

Defendant School District of Rhinelander Board of Education is an elected body responsible for governing the School District of Rhinelander, which derives its authority from the Wisconsin Constitution and state statutes and receives federal funds from the U.S. Department of Education and the U.S. Department of Health and Human Services.

### B. Johnson's Background and Treatment by the District

Johnson's sex assigned at birth was female; however, Johnson has long identified as nonbinary. Johnson was formally diagnosed with gender dysphoria in 2018 by a pediatrician. Following this diagnosis, Johnson's pediatrician continued treatment and worked on referrals. In addition, during the 2018-2019 school year, Johnson informed the District of this transition, changed name, and preferred pronouns.

At school, Johnson faced regular harassment from classmates, who would yell out derogatory slurs. The harassment was especially severe during physical education classes, because students would harass Johnson for changing in the women's locker room.

---

[2] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint, as well as all matters of public record, not only as true but viewed in a light most favorable to plaintiff, drawing all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007). The following facts are drawn from plaintiff's first amended complaint (dkt. #6) except as otherwise noted.

[3] Nonbinary individuals are people who may identify as a gender other than a woman/girl or man/boy. *See* American Psychological Association, APA Resolution on Gender Identity Change Efforts 1 (Feb. 2021) https://www.apa.org/about/policy/resolution-gender-identity-change-efforts.pdf.

Eventually, Johnson was forced to change in the nurse's restroom and later dropped out of the course.

Faculty members could not be relied on to control this harassment. In particular, Johnson's physical education teacher would instigate harassment by dividing the class into groups of boys and girls, despite being notified by Johnson that this practice constituted harassment. Additionally, a teacher that did not work with Johnson, would go out of his way to misgender Johnson, using terms like "ma'am" and "Ms.," and when corrected, would smirk and remark, "I guess I shouldn't call you that."

In December 2019, the District further recommended that Johnson switch to online schooling, increasing the sense of isolation and worsening Johnson's mental health. While nevertheless returning to in-person education in 2020, Johnson was again met with harassment, resulting in suicidal ideations and eating disorders. In summer 2021, Johnson sought and received care through Rogers Behavioral Health.

Johnson next returned to full-time, in-person instruction at the District in October 2021. Faculty were notified that Johnson would be returning as well as their proper pronouns and full name. On return, Johnson was informed that they could only use one bathroom at the school. This bathroom was far from classes, and Johnson was the only student granted access.

Within days of Johnson's return, classmates resumed name calling, theft, and taking photographs without permission. As harassment continued, the District prohibited Johnson from participating in physical education and culinary classes and limited Johnson to three, in-person classes, requiring they take the rest online.

Seeking additional support, Johnson filed a complaint with the Department of Education Office of Civil Rights (the "OCR").  The OCR investigation suggested that the District was not properly tracking sex-based harassment, and that the District's policies regarding bathroom usage, exclusion from some classes, and compelled online courses were increasing Johnson's struggle.

To accommodate Johnson's hybrid school schedule, their mother Brooke had to change her work schedule.  As the harassment intensified, Brooke feared for Remus' safety. As a result, Brooke sold the family's home, changed jobs, and moved across the country to find a suitable school.  Because the move proved too difficult for the family as a whole, they all returned to Wisconsin.


OPINION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, (2007)).  A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely."  *Id.*

Title IX states that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance...." 20 U.S.C. §

4

1681(a).  To plead a Title IX claim for direct discrimination, plaintiffs must allege that "(1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 810 (7th Cir. 2021).

Defendant does not contest a finding that they receive federal funds.  Rather, they assert that discrimination based on an individual's nonbinary gender identity is not within the purview of sex discrimination under Title IX and that plaintiff has not pled sufficient facts to demonstrate that defendant directly or indirectly discriminated against them.

## I.  Scope of Title IX

As a threshold question, the court must first determine whether discrimination based on an individual's nonbinary gender identity is discrimination based on sex, violating Title IX.  Although subject to current debate in and out of court, the scope of the phrase "based on sex" has been found to include transgender students in several circuits.  *See generally Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) (*abrogated on other grounds*); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020); and *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110 (9th Cir. 2023).  However, none of their opinions directly address nonbinary students, and not every court has agreed on this question.  *See Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022).[4]

---

[4] The only case squarely addressing this question is *L.O.K. by & through Kelsey v. Greater Albany Pub. Sch. Dist. 8J*, No. 6:20-CV-00529-AA, 2022 WL 2341855 (D. Or. June 28, 2022).  That court reasoned that Title IX's "prohibition of discrimination extends to situations where 'the

This case presents a different issue than *Whitaker* and *Adams*: whether policies that discriminate against a student based on their nonbinary identity violate Title IX. However, both decisions suggest how to interpret and apply the same language. In *Whitaker*, the Seventh Circuit looked to Title VII jurisprudence from the Supreme Court and other circuits to help inform its understanding of sex discrimination. 858 F.3d at 1047–49. Based on their review, the Seventh Circuit held that: "sex discrimination 'encompasses both the biological differences between men and women, and gender discrimination, that is, *discrimination based on a failure to conform to stereotypical gender norms'*"; and policies that punish an "individual for his or her gender non-conformance" violate Title IX. *Whitaker*, 858 F.3d at 1049 (quoting *Smith v. City of Salem*, 378 F.3d 566, at 573 (6th Cir. 2004) (emphasis added). As a result, the Seventh Circuit held that transgender individuals, who, by definition, do not conform to the sex-based stereotypes, are protected by Title IX against policies that subject them to different rules, sanctions, and treatment than non-transgender students. *Id.* In fairness, however, it is unclear whether the Seventh Circuit's use of male and female pronouns limits its decision to individuals who identify as either male or female, rather than both or neither.

In *Adams*, the Eleventh Circuit took two approaches to hold a male transgender student could *not* bring a claim under Title IX for a policy prohibiting his access to men's restrooms at school. 57 F.4th 791. First, the court found that, at the time Title IX was enacted, "sex" was unambiguously defined "on the basis of biology and reproductive

---

discriminator is necessarily referring to the individual's sex to determine incongruence between sex and gender, making sex a but-for cause for the discriminator's actions.'" *Id.* (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020)).

function." *Id.* at 812. Using that definition, the court held that the school's policy prohibiting a male transgender student from the men's restroom did not violate Title IX because Title IX expressly allows schools to provide separate bathrooms based on sex. *Id.* at 815. Second, even the meaning of "sex" could be found the be ambiguous, the court applied the "principles of the clear-statement rule." *Id.* Under the clear-statement rule, legislation passed pursuant to the Spending Clause, such as Title IX, must be unambiguous so that states have adequate notice of when they could be held liable for certain conduct. *Id.* Applying this rule, the court then held that it would be untenable to find a school board should have been on notice that its policy of separating male and female bathrooms based on biological sex violated Title IX, particularly given that "schools across the country separate bathrooms based on biological sex and colleges and universities across the country separate living facilities based on biological sex." *Id.* at 816.

Ultimately, this court is bound by the holdings of the Seventh Circuit and, although *Whitaker* dealt with transgender students, under that court's reasoning, policies that discriminate against a student based on their nonbinary identity would appear to constitute discrimination based on sex under Title IX. In particular, the court concludes that nonbinary students are protected by Title IX against policies that subject them to different rules, sanctions, and treatment than those who are cisgender because, like transgender students, nonbinary students, by definition, do not conform to the stereotypes of the sex they were assigned at birth.

Defendant contends that this court should discount the Seventh Circuit's decision in *Whitaker* because it is "shallow and underdeveloped." (Dkt. #17 at 20 n.9.) In turn, they ask this court to adopt the reasoning adopted by the Eleventh Circuit in *Adams*

discussed above. However, whatever criticisms might or might not be leveled about its underlying reasoning, this district court is bound to follow the holdings of the Seventh Circuit. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004); *Colby v. J.C. Penney Co.*, Inc., 811 F.2d 1119, 1123 (7th Cir. 1987). Moreover, since *Whitaker*, the Seventh Circuit has been asked to address the arguments raised in *Adams*, and has declined to revisit its holding. *See A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023) ("factors [contemplating overruling circuit court law] do not weigh in favor of overruling *Whitaker*. . . . As a result, '[o]verruling would not be consistent with a proper regard for the stability of our decisions.'") (quoting *Buchmeier v. United States*, 581 F.3d 561, 565 (7th Cir. 2009)). Thus, this court is bound by the Seventh Circuit's interpretations and applications of Title IX in *Whitaker*, leading to the conclusion that discrimination based on a nonbinary individual's nonconformance with sex gender stereotypes is discrimination based on sex.

## II. Plaintiff's Factual Allegations Support A Claim For Relief

Having held that nonbinary individuals are protected against policies that punish nonconformance with gender stereotypes, the court has little trouble finding plaintiff has pled sufficient facts giving rise to a reasonable inference that the District discriminated against plaintiff based on sex. Plaintiff may demonstrate sex discrimination by alleging facts that they have been "treated worse than a similarly situated person because of sex." *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, at 772 (7th Cir. 2023) (*citing Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 658 (2020)). More specifically, plaintiff may establish sex discrimination by alleging facts demonstrating or allowing a reasonable

inference that "sex was a motivating factor in the [covered institution's] decision." *Doe v. Purdue Univ.*, 928 F.3d 652 at 667 (7th Cir. 2019).

Here, plaintiff pleads sufficient facts for a plausible inference of sex discrimination to overcome a motion to dismiss based on plaintiff being excluded from taking certain courses, required to take some classes online, and limited to the use of only one bathroom in the school. Indeed, the Seventh Circuit has again reviewed similar policies in other school districts, finding them not to be true alternatives and to punish non-cisgender students. *See Whitaker*, 858 F.3d at 1049–50 (district's bathroom policy violated Title IX because of the distance between plaintiff's classes and the bathroom, as well as the increased stigmatization caused plaintiff); *Metro. Sch. Dist. of Martinsville* 75 F.4th at 772 ( "offering remote schooling and therefore denying a transgender student the opportunity to socialize with and learn alongside his classmates is not a true alternative.").

While defendant also argues that the restriction to a gender-neutral bathroom for someone who identifies as nonbinary distinguishes this case from *Whitaker*, this argument truncates the full analysis of *Whitaker* which also held that the alternatives provided by the defendant in that case were not sufficient "because [the bathroom's] distant location to [plaintiff's] classrooms and the increased stigmatization they caused [plaintiff.]" These claims are alleged by the plaintiff here.

Moreover, like *Whitaker*, there is a reasonable inference that defendant continued this discriminatory treatment based on plaintiff's nonbinary sexual identity. Specifically, defendant prohibited plaintiff from taking certain classes, rather than discipline the students that harassed plaintiff. Defendant also limited in-person classes for plaintiff, rather than limit the students that harassed plaintiff, and defendant required only plaintiff

to traverse the school to access a bathroom, rather than address the students' harassment of plaintiff.

Finally, defendant argues that they needed notice from plaintiff of their gender nonconforming status for Title IX protections to apply, a requirement they also infer from *Whitaker*. Defendant's argument that they needed some "official notice" ignores that the defendant in *Whitaker* was not informed of that plaintiff's diagnosis either. *See generally Whitaker*, 858 F.3d 1034 (while plaintiff was diagnosed with gender dysphoria, at no point in the opinion is it indicated that the *school* was notified of this fact until after the lawsuit commenced). Moreover, to the extent *Whitaker* contemplated a notice requirement to engage Title IX protections for individuals with nonconforming gender identities, plaintiff has met that mark, at least for pleading purposes, having alleged their gender dysphoria diagnosis in 2018 and the many instances in which plaintiff brought their status to defendant's attention, including: when plaintiff informed defendant of their diagnosis, transition, and new name and pronouns in 2018; when plaintiff would meet with staff and administrators to attempt to prevent further harassment at the beginning of each school year; and when the associate principle emailed staff that plaintiff would be returning and their preferred pronouns and name in 2021. Similarly, the Seventh Circuit noted in *Whitaker*,

> This is not a case where a student has merely announced that he is a different gender. Rather, [plaintiff] has a medically diagnosed and documented condition. Since his diagnosis, he has consistently lived in accordance with his gender identity. This law suit demonstrates that the decision to do so was not without cost or pain.

*Id.* at 1050.

On these facts, therefore, there is a reasonable inference that plaintiff was denied benefits to educational programming based on their gender identity. Having found that plaintiff has alleged sufficient facts claiming a Title IX violation under a theory of direct discrimination, the court need not reach defendant's alternative argument regarding indirect discrimination.

## ORDER

For the reasons stated above IT IS ORDERED that:

1) Defendants' motion to dismiss (dkt #16) is DENIED with respect to all counts brought plaintiff Remus Johnson against defendant School District of Rhinelander Board of Education and

2) Defendants' motion to dismiss (dkt #16) is GRANTED with respect to all claims brought by plaintiff Brooke Johnson-Paquette or against defendant Eric Burke in his official capacity.

3) Plaintiff Brooke Johnson-Paquette and defendant Eric Burke are DISMISSED from this lawsuit for lack of standing and as a redundant defendant, respectively.

Entered this 27th day of March, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

11