UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

REMUS JOHNSON,

      Plaintiff,

v.

                                              Case No. 23-CV-761

SCHOOL DIST. OF RHINELANDER
BOARD OF EDUCATION,

      Defendant.

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE
PLAINTIFF'S EXPERT REPORT AND TESTIMONY**

**INTRODUCTION**

Plaintiff alleges that the School District of Rhinelander Board of Education (the "District") violated Title IX of the Education Amendments of 1972, 20 U.S.C.S. § 1681 et seq by engaging in sex-based discrimination. To support this claim, Plaintiff submitted a report from an expert, Dr. MacIntyre. He has drafted a report titled "Expert Report on Psychological Harm" (the "Report"). The Report is purported to be an expert report on causation, though much of the Report discusses damages.

The Report is deficient, inadmissible and should be barred under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and Fed. R. Evid. 702. The Report is conclusory and does not rely on the factual record but instead relies entirely on a recitation (and acceptance) of the Amended

Complaint. In exercising its gatekeeping function, the Court should bar Dr. MacIntyre's report and testimony.

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Federal Rules of Evidence 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "It is the duty of a district court to function as a 'gatekeeper' regarding expert testimony, which entails determining whether the proposed expert testimony, or the proffered expert report, is both relevant and reliable." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 945 (W.D. Wis. 2008) (citing *Daubert*, 509 U.S. at 589).

In *Daubert*, the United States Supreme Court articulated four factors to be used when assessing the reliability of expert testimony: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether standards control operation of the technique; and (4) whether the theory or technique is generally accepted within the relevant community.[1] 509 U.S. at 593-94. "However, these *Daubert* factors are not a definitive

---

[1] Other factors may apply. The Seventh Circuit, parroting the Advisory Committee Notes to Rule 702, has suggested other

2

or exhaustive checklist. Instead, they must be employed flexibly 'to account for the various types of potentially appropriate expert testimony.'" *Tyler v. JP Operations, LLC*, 342 F. Supp. 3d 837, 844 (S.D. Ind. 2018) (citing *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003)).

The Seventh Circuit has set forth a three-step analysis in applying the *Daubert* standard: "(1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue." *Id.* (internal citations omitted).

*Daubert's* framework applies to social science experts to the same extent as other disciplines:

> As the Seventh Circuit instructs, *Daubert*'s 'framework for assessing expert testimony is applicable to social science experts, just as it applies to experts in the hard sciences.' *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) (citations omitted). Although 'the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case,' *Kumho Tire Co.*, 526 U.S. at 141 (quoting *Daubert*, 509 U.S. at 594); *see also Mihailovich*, 359 F.3d at 919 ('[T]he *Daubert* framework is a flexible one that must be adapted to the particular circumstances of the case and the type of testimony being proffered.'), the methodology used by social science experts to reach their conclusions must 'adhere to the same standards of intellectual rigor that are demanded in [their] professional work' in order to be reliable. *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (citation omitted); *see also Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 587 (7th Cir. 2000) (stating that while the district court should not consider the 'factual underpinnings' of the testimony, it should determine whether '[i]t was appropriate for [the expert] to rely on the test that he administered and upon the

---

benchmarks for gauging expert reliability, including: (5) whether 'maintenance standards and controls' exist; (6) whether the testimony relates to 'matters growing naturally and directly out of research they have conducted independent of the litigation,' or developed 'expressly for purposes of testifying'; (7) 'whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion'; (8) 'whether the expert has adequately accounted for obvious alternative explanations'; (9) 'whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting'; and (10) 'whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.'

*Lemmermann v. Blue Cross Blue Shield*, 713 F. Supp. 2d 791, 797 n.7 (E.D. Wis. 2010) (citing *Fuesting v. Zimmer, Inc. (Fuesting I)*, 421 F.3d 528, 534-35 (7th Cir. 2005)).

sources of information which he employed' when assessing whether expert testimony is reliable). 'A district court enjoys broad latitude both in deciding how to determine reliability and in making the ultimate reliability determination.' *Bryant v. City of Chicago*, 200 F.3d 1092, 1098 (7th Cir. 2000) (citing *Kumho Tire Co.*, 526 U.S. at 141).

*Obrycka v. City of Chi.*, 792 F. Supp. 2d 1013, 1024 (N.D. Ill. 2011).

## ARGUMENT

**I. DR. MACINTYRE'S EXPERT REPORT IS BASED ON INSUFFICIENT FACTS OR DATA BECAUSE HE RELIED SOLELY ON THE AMENDED COMPLAINT AS THE FACTUAL BASIS FOR HIS OPINIONS.**

Subsections (b) through (d) of Rule 702 set forth three requirements for reliability: (1) the expert testimony must be "based on sufficient facts or data"; (2) the expert testimony must be "the product of reliable principles and methods"; and (3) the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d); *Smith v. Ill. DOT*, No. 15 C 2061, 2018 U.S. Dist. LEXIS 133810 at *38 (N.D. Ill. Aug. 8, 2018), *aff'd*, 936 F.3d 554 (7th Cir. 2019).

Understanding what the expert has relied upon as the factual basis for his opinions is critical under Rule 702, and that issue is significant in this case. An expert cannot rely upon allegations in the complaint as the factual basis for his report. "Expert testimony must be based on sufficient and known facts . . . and the allegations in [plaintiff's] complaint are *not* facts." *Chen v. Mnuchin*, No. 14 C 50164, 2020 U.S. Dist. LEXIS 180574, at *6-7 (N.D. Ill. Sep. 30, 2020) (internal citations omitted). This is impermissible because an expert cannot base an opinion primarily on allegations in a complaint without evaluating actual factual evidence:

> these allegations can neither form a reliable factual basis for expert testimony to be considered at summary judgment or trial. The district court's role as 'gate-keeper' under *Daubert* requires it to exclude expert testimony when it is 'based upon speculation, unsupported assumptions, or conclusory allegations.' *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 326 (N.D. Ill. 2008) (finding expert testimony to be objectionable when the underlying facts of have no 'affirmative proof'). '**Allegations in a complaint are not evidence**.' *Nisenbaum v. Milwaukee County*, 333 F.3d 804,

4

810 (7th Cir. 2003). **Indeed, federal courts across the country have found that expert opinions that rely primarily upon allegations in a complaint are not 'based on sufficient facts and data,' as required by Rule 702, and are otherwise unreliable**. *See, e.g., Wasilewski v. Abel Womack, Inc.*, No. 3:10cv1857 (VAB), 2016 U.S. Dist. LEXIS 4953 (D. Conn. Jan. 14, 2016) (questioning the reliability of an expert's methodology to the extent that he relied exclusively on allegations from complaints to establish the facts); *Mosby v. Railey*, No. 5:3cv167-OC-10 GRJ, 2005 U.S. Dist. LEXIS 57437, *3 (M.D. Fla. Jul. 29, 2005) (expert testimony based solely on the allegations in the operative complaint, plaintiff's personnel file, and racial demographics of the police department was not 'based upon sufficient facts and data'); *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, No. 98cv8272 (RPP), 2003 U.S. Dist. LEXIS 17623, *10 (S.D.N.Y. Oct. 2, 2003) (proposed expert testimony based solely on allegations in the complaint and a 'limited number' of depositions was not based upon 'sufficient facts or data').

*Chen v. Yellen*, No. 3:14-cv-50164, 2021 U.S. Dist. LEXIS 175372, at *7-9 (N.D. Ill. Sep. 15, 2021) (emphasis added).

Reliance on a one-sided set of facts without considering potentially competing evidence is unreliable as a methodology. The failure to address the other facts in evidence "amounts to cherry-picking the facts . . . and such selective use of facts fails to satisfy the scientific method and *Daubert*." *LeClercq v. Lockformer Co.*, No. 00cv07164, 2005 U.S. Dist. LEXIS 7602, *15 (N.D. Ill. Apr. 28, 2005); *see also Van v. Ford Motor Co.*, 332 F.R.D. 249, 269 (N.D. Ill. 2019) ("Experts who engage in cherry-picking of the evidence fail to satisfy the scientific method and *Daubert*."). An expert's estimony is simply unreliable when the expert heavily relies on one "alleged side of the story without considering potentially contrary evidence." *Mnuchin*, 2020 U.S. Dist. LEXIS 180574, at *12-13.

For example, in *Smith v. Ill. Dep't of Transp.*, the Seventh Circuit held that a district court properly excluded expert testimony that "relied only on what appears to be plaintiff-curated records." 936 F.3d 554, 558 (7th Cir. 2019). In *Smith*, the plaintiff's expert opined that the plaintiff had been subjected to a hostile work environment and retaliated against for reporting discrimination. *Id.* at 558-59. In doing so, however, the expert did not interview the plaintiff or

5

even review any deposition testimony; the expert simply read the plaintiff's evaluations and portions of two manuals. *Id.* The appellate court upheld the district court's decision to exclude the expert's testimony at summary judgment because the expert's "reliance on an anemic and one-sided set of facts cast[] significant doubt on the soundness of her opinion[.]" *Id.*

Contrary to Rule 702, Dr. MacIntyre relied on insufficient facts and employed unreliable methods in forming his opinions. He relied exclusively upon the allegations set forth in Plaintiff's Amended Complaint as the factual basis for reaching his conclusions. Dr. MacIntyre lists materials he reviewed at the outset of his report. And in that list, he lists the Amended Complaint and the depositions of Plaintiff and Plaintiff's mother. But he does not list Defendant's answer to the Amended Complaint or Defendant's discovery responses.

More importantly, while Dr. MacIntyre lists the deposition transcripts as being provided to him, his actual analysis and report relies exclusively on the allegations contained in the Amended Complaint and accepts all of them as true, showing that he relied primarily upon allegations in a complaint that are not "based on sufficient facts and data" as required by Rule 702.

There is no doubt that Dr. MacIntyre relied only on the Amended Complaint. Under "Section V." of his report, titled "Detailed Findings," Dr. MacIntyre's lists six "questions" which he provides answers to as his way of explaining his opinions. *See* [ECF 59, pp. 12-16]. Each of those six questions lays out what evidence he relied upon when coming to those conclusions. And every one of the six answers cites only "Complaint evidence:" as the factual basis for formulating his opinion. There is no citation to or refence to Plaintiff's or Plaintiff's mother's deposition testimony. There is no reference to anything other than the Amended Complaint.

Dr. MacIntyre's expert report is much like the report that the district court found inadmissible in *Yellen*, where the expert primarily relied upon the allegations in the plaintiff's

complaint without reference to other filings in the record. 2021 U.S. Dist. LEXIS 175372, at *14-15. While Dr. MacIntyre alludes to having reviewed the deposition transcripts of Plaintiff and Plaintiff's mother, neither of those transcripts were cited or referred to. Dr. MacIntyre's expert report is essentially a recitation of allegations in the Amended Complaint accepted as true, which at times are contradicted by Plaintiff's own deposition testimony, followed by his own wide ranging and generalized conclusions. For example, in Question 1 in Section V., Dr. MacIntyre cites "exclusion from PE . . . due to 'safety' concerns," yet Plaintiff admits they were never excluded from PE but instead chose to participate in a self-paced version and even pushed for that alternative. *See* [ECF 48-1, 55:7-13].

In Question 4 Dr. Macintyre cites that "The District limited Remus to one distant restroom," yet the record shows that Plaintiff chose to use the gender-neutral bathroom instead of the men's or women's bathrooms, and that Plaintiff was told that any alternatives that they felt would be beneficial could be discussed, yet they chose not to engage in further conversations. *See* [ECF 43, ¶¶ 5-7]; [ECF 44-2]. Dr. MacIntyre's analysis does not reflect this.

In Question 4 in Section V., Dr. MacIntyre writes that the "restroom restriction" exacerbated certain mental health issues, but he does not identify what that "restriction" was. *Id*. He simply assumes as true that there was a "restroom restriction." A comparison of Dr. MacIntyre's report to the Amended Complaint also shows that this passage is an almost verbatim quote from Paragraph 48 of the Amended Complaint, ECF 13.

Dr. MacIntyre's report suffers from the exact deficiencies that the *Yellen* court warned about. The *Yellen* court warned against relying too heavily on the allegations of a complaint because it provides unreliable and unsubstantiated claims, not facts. That ultimately leads to problems such as the one faced by Dr. MacIntyre: the Amended Complaint's allegations are

7

contrary to the real facts. An expert's report that relies exclusively on allegations from the complaint instead of facts leads to an unreliable report and does not provide the sufficient facts or data required for validity under F.R.E. 702(b).

## **CONCLUSION**

For the reasons set forth above, the District respectfully requests that the Court grant its motion to bar the expert report and testimony of Dr. MacIntyre.

Dated this 22nd day of December, 2025.

                        STADLER SACKS LLC
                        Attorneys for Defendant

      By:      /s/ *Ronald S. Stadler*
                  Ronald S. Stadler
                  State Bar No. 1017450
                  Jonathan E. Sacks
                  State Bar No. 1103204

303 North Main Street
West Bend, WI 53095
telephone: 262-304-0610
e-mail: jes@stadlersacks.com
       rss@stadlersacks.com